The Honorable Gregory S. Brown Santa Rosa County Property Appraiser Post Office Box 606 Milton, Florida 32572
Dear Mr. Brown:
You ask substantially the following question:
If county-owned property is leased to a private individual, are real property improvements on the property titled in the private individual subject to ad valorem taxation?
In sum:
Real property improvements titled in a county are not subject to ad valorem taxes, but such improvements titled in a private individual who has leased land from the county would be subject to ad valorem taxation. A determination of whether a lessee owns improvements for purposes of taxation, however, is one that must be made by the property appraiser.
You state that Santa Rosa County leases various parcels of real estate on Navarre Beach to private individuals. The leases vary in their terms, some stating that title to any buildings or improvements of a permanent character constructed on the property immediately vests in Santa Rosa County, while others provide that title to such improvements vests in the county upon termination of the lease — that is, the private individual/lessee holds title to the improvements until the lease ends.
In Bell v. Bryan,[1] the court considered whether improvements to county-owned property leased to private lessees were exempt from ad valorem taxation when the improvements are also owned by the county. In Bell, the tax collector had issued tax certificates on the improvements in order to enforce unpaid tax assessments. The First District Court of Appeal found that where improvements are owned by the county, it would be inappropriate to enforce tax assessments by the sale of tax certificates.[2] The court concluded that assessments on improvements titled in the county should not be at the full real property rate, but rather should be determined at the intangible personal property rate as part of the leasehold.
You posit that the logical extension of Bell is that improvements titled in the lessee, rather than the governmental entity, may be assessed at the full real property rate for ad valorem taxes.
Section 196.001, Florida Statutes, states:
"Unless expressly exempted from taxation, the following property shall be subject to taxation in the manner provided by law:
(1) All real and personal property in this state and all personal property belonging to persons residing in this state; and
(2) All leasehold interests in property of the United States, of the state, or any political subdivision, municipality, agency, authority, or other public body corporate of the state."
Section 196.199, Florida Statutes, sets forth exemptions for property owned by governmental entities. Subsection (2) of the section specifically addresses the conditions under which government-owned property used by nongovernmental lessees shall be exempt:
"(a) Leasehold interests in property of the United States, of the state or any of its several political subdivisions, or of municipalities, agencies, authorities, and other public bodies corporate of the state shall be exempt from ad valorem taxation only when the lessee serves or performs a governmental, municipal, or public purpose or function, as defined in s. 196.012(6). In all such cases, all other interests in the leased property shall also be exempt from ad valorem taxation. . . .
(b) Except as provided in paragraph (c), the exemption provided by this subsection shall not apply to those portions of a leasehold or other interest defined by s. 199.023(1)(d), subject to the provisions of subsection (7).[3] Such leasehold or other interest shall be taxed only as intangible personal property pursuant to chapter 199 if rental payments are due in consideration of such leasehold or other interest. If no rental payments are due pursuant to the agreement creating such leasehold or other interest, the leasehold or other interest shall be taxed as real property. Nothing in this paragraph shall be deemed to exemptpersonal property, buildings, or other real property improvementsowned by the lessee from ad valorem taxation.
(c) Any governmental property leased to an organization which uses the property exclusively for literary, scientific, religious, or charitable purposes shall be exempt from taxation." (e.s.)
Thus, the plain language of the statute makes it clear that personal property, buildings, or other real property improvements owned by the lessee are not exempt from ad valorem taxation.[4]
In Parker v. Hertz Corporation,[5] the Second District Court of Appeal considered whether real property improvements made by a lessee of county property were subject to ad valorem taxation. The court cited section 196.199(2)(b), Florida Statutes, as providing the controlling statutory language in determining whether the lessee "owned" the improvements for purposes of ad valorem taxation.
The lessee, Hertz Corporation (Hertz), entered into a ground lease with the Hillsborough County Aviation Authority (authority) for land on which to operate its automobile rental business. Under the terms of the lease, Hertz erected improvements on the land. Title to all fixed improvements remained in Hertz for the life of the lease, with title passing to the authority upon termination of the lease. Hertz was authorized to depreciate its costs for such improvements and, in the event of early termination of the lease due to the authority's need for the land or Hertz's ceasing business at the airport, the authority was obligated to purchase the fixed improvements at actual cost, less the depreciation previously taken by Hertz. The court noted that while the authority had maintained control to regulate improvements and their modification, Hertz had freedom to initiate construction and alterations at no cost to the authority. Hertz also was responsible for the maintenance of the premises, including insurance coverage for loss due to fire. The lease provided that Hertz would pay all taxes assessed or imposed upon the land or any structure erected or installed on the premises.
Hertz argued that its mere possessory interest in the improvements, its lack of ability to freely use or enjoy the property and its inability to alienate the premises precluded finding ownership on its part. The court rejected this argument, concluding that while unfettered use and enjoyment of property and the ability to alienate the premises are characteristics of ownership, their absence alone, in light of other factors contained in the lease, did not require finding that the one in possession of the property was not the owner.
Contrasting the decision in Bell v. Bryan,[6] the court found that unlike Bell, where the leasing arrangement created a leasehold interest in the property owned by the county and vested ownership of improvements thereon in the county, title to the improvements remained in the lessee Hertz throughout the duration of the lease. The court further noted that while the authority was not obligated to pay for the improvements at the end of the lease when title passed to the authority, suggesting that the authority owned the improvements all along, a more telling indicator of ownership by the authority would have been the payment of rent by Hertz for use of the building during the term of the lease. The court concluded that Hertz possessed and exercised sufficient "dominion over the improvements" to find that it was the owner subject to ad valorem taxation.
Another case providing insight into ownership for purposes of ad valorem taxation is Marathon Air Services, Inc. v. Higgs.[7] InHiggs, Monroe County leased airport land to Marathon Air Services (Marathon) to conduct fixed base operator services at the airport. Under the lease, Marathon paid rent to the county, but agreed to construct a building from which to conduct business. The title to the building remained in Marathon during the lease and would become the county's property upon termination of the lease. The property appraiser placed the building on the tax roll and assessed ad valorem taxes. Marathon argued that it performed a governmental function as a fixed base operator and should receive an exemption from ad valorem taxation pursuant to section196.199(2)(a), Florida Statutes.
While the Higgs court conceded that Marathon performed a governmental function, it found that the building was not part of the leasehold and, therefore, not exempt from ad valorem taxation under section 196.199(2)(a), Florida Statutes.
Subsequent to the Higgs decision, the Legislature amended section196.012(6), Florida Statutes, defining "[g]overnmental, municipal, or public purpose or function" to specifically include the activities of a lessee of airport property when the "real property is used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed base operation which provides goods and services to the general aviation public in the promotion of air commerce. . . ."[8]
The amendatory legislation also defined "[o]wned by the lessee" as used in Chapter 196, Florida Statutes, to specifically exclude:
"personal property, buildings, or other real property improvements used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed base operation. . . . For purposes of determination of "ownership", buildings and otherreal property improvements which will revert to the airportauthority or other governmental unit upon expiration of the termof the lease shall be deemed "owned" by the governmental unit andnot the lessee."[9] (e.s.)
This statutory change makes it clear that buildings or other real property improvements erected by a lessee on airport property that revert to the airport authority at the end of the lease are not "owned" by the lessee. The ability of the Legislature to create such an exemption from taxation, however, appears questionable in light of Sebring Airport Authority v. McIntyre.[10]
In McIntyre, the Supreme Court of Florida agreed with the lower appellate court that the Legislature's redefinition of "governmental, municipal or public purpose or function" to include a lessee's use of property for a convention center, visitor center, sports facility, concert hall, arena, stadium, park or beach, was an "impermissible attempt by the Legislature to create a tax exemption that is not authorized by the Florida Constitution."[11]
The leases under consideration in this instance differ in the manner in which they treat real property improvements for purposes of ownership. Whether real property improvements are owned by the lessee, however, is a factual determination that must be made by the property appraiser and cannot be assumed by this office. The Court's discussion in Parker v. Hertz Corporation appears to provide guidance in making such a determination.[12]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] 505 So.2d 690 (Fla. 1st DCA 1987), rev. den.,513 So.2d 1060 (Fla. 1987), aff'd after remand, 519 So.2d 1024 (Fla. 1st DCA 1988).
[2] The opinion cites to s. 197.116(8), Fla. Stat. (1983), which provided that "[n]o certificate shall be sold on, nor any lien created in, property owned by any governmental unit whose property has become subject to taxation due to its lease to a nongovernmental lessee. Such delinquent taxes shall be enforced and collected in the manner provided in s. 196.199(7)." Section 197.116, Fla. Stat. (1983) was repealed by s. 126, Ch. 85-342, Laws of Fla., effective December 31, 1985. In s. 174, Ch. 85-342, Laws of Fla., s. 197.432, Fla. Stat., was created substantially reenacting the provisions of s. 197.116, Fla. Stat. Section197.432(9), Fla. Stat., created by s. 174, Ch. 85-342, Laws of Fla., stated: "No certificate shall be sold on, nor any lien created in, property owned by any governmental unit the property of which has become subject to taxation due to lease of the property to a nongovernmental lessee. Such delinquent taxes shall be enforced and collected in the manner provided in s.196.199(8)."
[3] Section 199.023(1)(d), Fla. Stat., in defining "[i]ntangible personal property," excepts leasehold or other possessory interest described in s. 4(a), Art. VII of the State Constitution or s.196.199(7), Fla. Stat., but includes
"all leasehold or other possessory interests in real property owned by the United States, the state, any political subdivision of the state, any municipality of the state, or any agency, authority, and other public body corporate of the state, which are undeveloped or predominantly used for residential or commercial purposes and upon which rental payments are due."
Subsection (7) of s. 196.199, Fla. Stat., provides that property originally leased for 100 years or more, exclusive of renewal options, is deemed to be owned for purposes of the section.
[4] Generally, all property of the United States, the state and its political subdivisions is immune from ad valorem taxation, as is property of municipalities when such property is used for governmental purposes. See, Sebring Airport Authority v. McIntyre,
2001 WL 328117, 26 Fla.L.Weekly S 197 (Fla. 2001) and CanaveralPort Authority v. Department of Revenue, 690 So.2d 1226 (Fla. 1996).
[5] 544 So.2d 249 (Fla. 2d DCA 1989).
[6] See, n. 1, supra.
[7] 575 So.2d 1340 (Fla. 3d DCA 1991).
[8] See, s. 3, Ch. 93-233, Laws of Fla.
[9] See, s. 196.012(6), Fla. Stat.
[10] 2001 WL 328117, 26 Fla.L.Weekly S 197 (Fla. 2001).
[11] Sebring, Slip Op. at Page 6, citing Sebring AirportAuthority v. McIntyre, 718 So.2d 296, 297 (Fla. 2d DCA 1998).
[12] Cf., Leon County Educational Facilities Authority v.Hartsfield, 698 So.2d 526, 529 (Fla. 1997) (county authority was equitable owner of project, making portion of project used for exempt purposes exempt from taxation); First Union National Bankof Florida v. Ford, 636 So. 523 (Fla. 5th DCA 1993) (counties, as parts of state, are immune from state, municipal, or other special districts' attempts at taxation).