# Supreme Court of Florida

_____

No. SC11-2231
_____

**1108 ARIOLA, LLC, et al.,**
Petitioners,

vs.

**CHRIS JONES, etc., et al.,**
Respondents.

[March 20, 2014]

CANADY, J.

In this case, we consider whether the improvements on certain leaseholds in Pensacola Beach on Santa Rosa Island that were created under leases granted by Escambia County are subject to the intangible personal property tax rather than the ad valorem real property tax.

In 1108 Ariola, LLC v. Jones, 71 So. 3d 892, 897-98 (Fla. 1st DCA 2011), the First District Court rejected the claim of the petitioner taxpayers that the improvements were not subject to ad valorem taxation.  The First District

concluded that the taxpayers are the equitable owners of the improvements and that the improvements are therefore subject to ad valorem taxation.  Id. at 893.  In so holding, the court specifically relied on its earlier decision in Ward v. Brown, 919 So. 2d 462 (Fla. 1st DCA 2005), which concerned the ad valorem taxation of the improvements on certain perpetual leaseholds on the portion of Santa Rosa Island located at Navarre Beach in Santa Rosa County.  1108 Ariola, LLC, 71 So. 3d at 897-98.  By subsequent order, the First District Court certified the following question as one of great public importance:

> WHETHER THE APPELLANT-LEASEHOLDERS ARE EQUITABLE OWNERS OF THE LEASEHOLD IMPROVEMENTS ON THE SUBJECT REAL PROPERTY WHEN THEY HAVE NEITHER A PERPETUAL LEASE OF THE UNDERLYING REAL PROPERTY NOR AN OPTION TO PURCHASE SUCH PROPERTY FOR NOMINAL VALUE.

We determined to exercise our discretionary jurisdiction under article V, section (b)(4), Florida Constitution.  For clarity, we now rephrase the certified question as follows:

> WHETHER A LESSEE CAN HAVE EQUITABLE OWNERSHIP— FOR PURPOSES OF AD VALOREM TAXATION—OF IMPROVEMENTS ON REAL PROPERTY ONLY IF THE LESSEE HAS A PERPETUAL LEASE OF THE UNDERLYING REAL PROPERTY OR THE RIGHT ULTIMATELY TO PURCHASE THE PROPERTY FOR NOMINAL VALUE.

For the reasons we explain, we answer the rephrased certified question in the negative and approve the decision reached by the First District.  We address a

related question concerning equitable ownership in <u>Accardo v. Brown</u>, No. SC11-1445 (Fla. Mar. 20, 2014).

## I.

Like the properties located in Santa Rosa County that are the subject of the First District's decision in <u>Ward</u> and of our decision in <u>Accardo</u>, the Escambia County properties at issue here are located on lands conveyed to Escambia County by the United States in 1947.  The First District summarized the relevant facts as follows:

> All of the leases at issue are for 99-year initial terms.  Although many of these leases include renewal options, some contain no renewal option, and none of the leases are automatically renewable. . . . [A]ll of appellants' leases here provide that legal title to any building or improvement of a permanent character erected on the premises shall vest in Escambia County, subject to the terms of the leases.  The leases require the lessee to make improvements on the property and to repair and maintain those improvements.  The leases provide that a leaseholder must rebuild any damaged or destroyed improvement so as to place it in its former condition and that no leaseholder may remove any improvement of a permanent character from the leasehold.
>
> Despite these restrictions, the leaseholders have significant benefits: they may mortgage or otherwise encumber their leaseholds without prior approval of the lessors; they have the ability to convey their leasehold interests by a sublease or assignment; they have the right to rent their leasehold interests for the production of income; and they receive the full benefit of any capital gains or appreciation in the values of their properties.  Although there are some variations in the leases, in this proceeding, the parties treated these leases as identical for purposes of determination of the issues in this case.

<u>1108 Ariola, LLC</u>, 71 So. 3d at 895.

## II.

The petitioner taxpayers argue that they have no equitable ownership interest in the properties at issue because the rights and obligations associated with the leaseholds are similar to those associated with ordinary leases. Their primary argument is that because they have neither the opportunity to acquire legal title to the improvements nor the right to perpetual renewal of their leases, they cannot be deemed the equitable owners of the improvements. The petitioners offer some additional arguments that we have determined do not merit discussion.

## III.

In Accardo, we explain at length the significance of the doctrine of equitable ownership in Florida's law regarding ad valorem taxation and discuss the interaction of the equitable ownership doctrine with the statutory provisions—§ 196.199(2), (7), Fla. Stat. (2006); §199.023(1)(d), Fla. Stat. (2005)—providing for the taxation as intangible personal property of certain leasehold and other possessory interests in property owned by a government entity. No. SC11-1445 at 4-6. In Accardo, we conclude that the taxpayers there are equitable owners who hold "virtually all the benefits and burdens of ownership of both the improvements and the land." Id. at 16. We reject the "argument that equitable ownership can exist under a leasehold only where there is a right ultimately to acquire legal title." Id. at 17. Although we have recognized that equitable ownership may exist where

a lessee under a lease for a limited term has the right to acquire legal title for nominal consideration, that right is not always a feature of equitable ownership.

Our holding in Accardo that the taxpayers in that case are the equitable owners of both the improvements and the underlying land, turns on the fact that the leases are perpetually renewable. In contrast, this case presents leaseholds that are not perpetually renewable.[1] We conclude, however, that this distinction—along with the absence of the right to obtain legal title for a nominal consideration—is not sufficient to remove the improvements on the properties at issue here from the scope of the equitable ownership doctrine.

Florida law recognizes that regardless of how legal title is held, the improvements on lands owned by a governmental entity may—for ad valorem tax purposes—be "owned" by the lessee of the lands. The final sentence of section 196.199(2)(b) provides that "[n]othing in this paragraph shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation." Of course, the reference to "owned by the lessee" must be viewed in the context of Florida's law concerning equitable ownership and thus cannot be restricted to the holders of legal title to improvements. And nothing in the text of the statute or in the broader legal

---

1. The record does show, however, that some of the leases at issue are perpetually renewable.

context suggests that this provision for the ad valorem taxation of "improvements owned by the lessee" is limited to circumstances where the lease of the land is perpetually renewable or the lessee has the right to acquire legal title for a nominal consideration.

Long ago, we held in <u>Gay v. Jemison</u>, 52 So. 2d 137, 138-39 (Fla. 1951), that improvements constructed by a lessee on government owned lands under a seventy-five-year lease were to be treated as property owned by the lessee. Our reasoning in <u>Gay</u> focused on the fact that the "probable useful life of the buildings" would not exceed the limited term of the leasehold. <u>Id.</u> at 138. Although the issue in <u>Gay</u> was the application of the state sales tax, the reasoning of <u>Gay</u> concerning the ownership of leasehold improvements on lands subject to a lease for a limited term is properly applied in the ad valorem taxation context. <u>See also</u> <u>Offutt Housing Co. v. Cnty. of Sarpy</u>, 351 U.S. 253, 261 (1956) (holding that the lessee of federal lands under seventy-five-year lease was properly considered the owner of the improvements for purposes of state taxation where the lessee would "enjoy[] the entire worth of the buildings and improvements"). Here, the petitioner taxpayers have presented this Court no specific argument concerning the useful life of the improvements.

We thus reject the petitioner taxpayers' primary argument that the district court's conclusion that they are the equitable owners of the improvements is

defeated by the fact that they have neither the right ultimately to acquire title nor the right to perpetually renew their leases. We also reject the petitioners' general argument concerning their rights and obligations under the leases for the same reasons we reject a similar argument in <u>Accardo</u>.

## IV.

The petitioner taxpayers have failed to present any argument establishing that they do not hold "virtually all the benefits and burdens of ownership" of the improvements at issue. <u>Leon Cnty. Educ. Facilities Auth. v. Hartsfield</u>, 698 So. 2d 526, 530 (Fla. 1997). The rephrased certified question is answered in the negative and the decision reached by the First District is approved.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D10-2050

(Escambia)

Danny L. Kepner of Shell, Fleming, Davis & Menge, Pensacola, Florida; Talbot D'Alemberte and Patsy Palmer of D'Alemberte & Palmer, PLLC, Tallahassee, Florida; Robert Bruce George and Katie L. Dearing of Liles, Gavin, Costantino, George & Dearing, P.A., Jacksonville, Florida,

for Petitioners

J. Elliott Messer, Thomas Marshall Findley, and Robert J. Telfer, III of Messer, Caparello & Self, P.A., Tallahassee, Florida,

for Respondents

Edward P. Fleming and Randall Todd Harris of McDonald Fleming Moorhead, Pensacola, Florida,

for Amicus Curiae Portofino Tower One Homeowners Association at Pensacola Beach, Inc.